Ryan W. Koppelman (SBN 290704)
Michael J. Newton (SBN 156225)
Katherine G. Rubschlager (SBN 328100)
**ALSTON & BIRD LLP**
950 Page Mill Road
Palo Alto, CA 94304
Telephone:   (650) 838-2000
Facsimile:   (650) 838-2001
ryan.koppelman@alston.com
mike.newton@alston.com
katherine.rubschlager@alston.com

Thomas W. Davison (*pro hac* forthcoming)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:   (202) 239-3300
Facsimile:    (202) 239-3333
tom.davison@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100
evan.woolley@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL ELECTRONICS INC., a Delaware Company,<br><br>    Plaintiff,<br><br>    v.<br><br>HISENSE CO., LTD., a Chinese Company, HISENSE ELECTRONICS MANUFACTURING COMPANY OF AMERICA CORP., a Georgia Company, HISENSE INTERNATIONAL CO., a Chinese Company, HISENSE IMPORT & EXPORT CO., a Chinese Company, QINGDAO HISENSE ELECTRIC CO., LTD., a Chinese Company, HISENSE INTERNATIONAL (HK) CO., LTD., a Hong Kong Company, | **Case No. 8:20-cv-00696**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Defendants.

Plaintiff Universal Electronics Inc. ("UEI") hereby brings its Complaint for patent infringement against Defendants Hisense Co., Ltd., Hisense Electronics Manufacturing Company of America Corp., Hisense International Co., Ltd., Hisense Import & Export Co. Ltd., Qingdao Hisense Import & Export Co. Ltd., Qingdao Hisense Electric Co., Ltd., and Hisense International (HK) Co., Ltd., (collectively, "Hisense") and alleges as follows:

## PARTIES

1.　　Plaintiff UEI is a Delaware corporation that has a principal place of business located at 15147 N. Scottsdale Road, Suite H300, Scottsdale, Arizona 85254. UEI has offices in this judicial district at 201 E. Sandpointe Ave., Santa Ana, CA 92707.

2.　　On information and belief, Hisense Co., Ltd., is a corporation duly organized and existing under the laws of the People's Republic of China, with a principal place of business at Hisense Tower No. 17, Donghaixi Road, Qingdao, Shandong Province, 266071, P.R. China.

3.　　On information and belief, Hisense Electronics Manufacturing Company of America Corporation is a corporation duly organized and existing under the laws of the state of Georgia, with a principal place of business at 7310 McGinnis Ferry Road, Suwanee, Georgia 20024. On information and belief, Hisense Electronics Manufacturing Company of America Corporation formerly did business as Hisense USA Corporation, and continues to use the Hisense USA Corporation name in some capacities. For example, Hisense Electronics Manufacturing Company of America Corporation uses the name "Hisense USA" on the https://www.hisense-usa.com/ website.  Hisense Electronics Manufacturing Company of America Corporation also uses the name "Hisense USA Corp." on the labeling of its Roku TV products. On information and believe, Hisense Electronics Manufacturing Company of America Corporation also has offices in this district at 11081 Tacoma Drive, Unit B, Rancho Cucamonga, California 91730.

4.　　On information and belief, Hisense International Co., Ltd. is a corporation duly organized and existing under the laws of the People's Republic of China, with a

principal place of business at Hisense Tower, No.17 Donghaixi Road, Qingdao, Shandong Province, 266071 P.R. China.

5.     On information and belief, Hisense Import & Export Co. Ltd., is a corporation duly organized and existing under the laws of the People's Republic of China, with a principal place of business at Hisense Tower No. 17, Donghaixi Road, Qingdao, Shandong Province, 266071, P.R. China.

6.     On information and belief, Qingdao Hisense Electric Co., Ltd., is a corporation duly organized and existing under the laws of the People's Republic of China, with an address of No. 218, Qianwangang Road, Economic and Technological Development Zone, Qingdao, Shandong Province 266555, P.R. China, which formerly did business under the name Hisense Electric Co., Ltd..

7.     On information and belief, Hisense International (HK) Co., Ltd., is a corporation duly organized and existing under the laws of Hong Kong, with a principal place of business at Room 3101-3105, Singga Commercial Centre, No. 148 Connaught Road West, Hong Kong.

8.     On information and belief, Hisense designs, develops, manufactures, sells, imports into the United States, and sells within the United States after importation Roku TVs. The "Hisense Accused Products" include, but are not limited to all of Hisense's R6, R7, R8, R6270, R6290, R7050, R7070, H4030, and H4 series Roku TVs. The Hisense Accused Products also include all Sharp branded Roku TVs.

9.     Defendants act in concert to manufacture, import, sell, offer for sale, and otherwise distribute the TCL Accused Products in California, in the Judicial District, and across the country.  The Hisense Electronics Manufacturing Company of America Corp. website states that "Hisense USA is the U.S. headquarters that was established by our parent company - Hisense - in Suwanee, GA."[1] The website further states that "The company has built 54 overseas companies and utilizes 14 high-end international

---

[1] *See* https://www.hisense-usa.com/company/

COMPLAINT FOR PATENT INFRINGEMENT

production facilities in Europe, Central America and South Africa. Hisense also has 12 research and development centers worldwide with the sole aim of delivering first-rate and affordable products that improve the lives of consumers."[2] Hisense Import & Export Co. is involved with importing and exporting TV components for the Hisense Accused Products.[3] Hisense International (HK) Co. Ltd. manufactures components for the Hisense Accused Products.[4] Hisense International Co., Ltd. is a manufacturer of component for the Roku Accused Products that are imported to the United States.[5]

10.   The Hisense Accused Products include labels identifying Hisense Electric Co. Ltd., which on information and belief refers to Qingdao Hisense Electric Co., Ltd. The packaging for the Hisense Accused Products includes labeling identifying "Hisense USA Corp," which on information and belief refers to Hisense Electronics Manufacturing Company of America Corporation.

11.   Hisense Electronics Manufacturing Company of America Corporation is Hisense's distributor in the United States and gives Hisense the business advantages of doing business in California.  Hisense Electronics Manufacturing Company of America Corporation is Hisense's general manager in California.

## PATENTS IN-SUIT

12.   UEI owns and has standing to sue for infringement of U.S. Patent No. 7,589,642 (the "642 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on September 15, 2009. A true and correct copy of the 642 Patent is attached to this Complaint as Exhibit A.

13.   UEI owns and has standing to sue for infringement of U.S. Patent No. 7,969,514 (the "514 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on June 28, 2011. A true and

---

[2] *See* https://www.hisense-usa.com/company/

[3] *See* https://www.importgenius.com/suppliers/hisense-import-and-export-co-ltd

[4] *See* https://www.bloomberg.com/profile/company/HISENZ:HK

[5] See https://panjiva.com/Hisense-International-Co-Ltd/27779376

COMPLAINT FOR PATENT INFRINGEMENT

correct copy of the 514 Patent is attached to this Complaint as Exhibit B.

14.   UEI owns and has standing to sue for infringement of U.S. Patent No. 9,911,325 (the "325 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on March 6, 2018. A true and correct copy of the 325 Patent is attached to this Complaint as Exhibit C.

15.   UEI owns and has standing to sue for infringement of U.S. Patent No. 10,325,486 (the "486 Patent"), entitled "System and Method for Optimized Appliance Control," which was duly and lawfully issued on June 18, 2019. A true and correct copy of the 509 Patent is attached to this Complaint as Exhibit D.

16.   UEI owns and has standing to sue for infringement of U.S. Patent No. 10,600,317 (the "317 Patent"), entitled "System and Method for Simplified Setup of a Universal Remote Control" which was duly and lawfully issued on March 24, 2020. A true and correct copy of the 317 Patent is attached to this Complaint as Exhibit E.

17.   UEI owns and has standing to sue for infringement of U.S. Patent No. 8,004,389 (the "389 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device" which was duly and lawfully issued on August 23, 2011. A true and correct copy of the 389 Patent is attached to this Complaint as Exhibit F.

## JURISDICTION AND VENUE

18.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

19.   This Court has personal jurisdiction over Hisense pursuant to the laws of the State of California, including California's Long Arm Statute, California Code of Civil Procedure § 410.10. Hisense has committed acts of infringement in California infringing UEI's asserted patents in California, and, as a result, Hisense is subject to specific jurisdiction here. In particular, Hisense sells and offers to sell hardware and software relating to TV devices that infringe UEI's patents in California, and specifically in this judicial district. Hisense does business in this judicial district relating to Hisense's accused products, and has an office located in this district at 11081 Tacoma Drive, Unit

B, Ranchi Cucamonga, California 91730. Hisense is subject to personal jurisdiction because it has a regular and established place in this district and it sells, distributes, and licenses its products in this District, such that it should reasonably and fairly anticipate being brought into this Court.

20.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Hisense has committed acts of infringement in this judicial district and has a regular and established place of business in this judicial district at 11081 Tacoma Drive, Unit B, Ranchi Cucamonga, California 91730. It occupies commercial office space at that address and employs numerous employees at this address.

<u>**COUNT ONE**</u>

<u>**INFRINGEMENT OF U.S. PATENT 7,582,642**</u>

21.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

22.     UEI is the owner of all rights, title, and interest in the 642 Patent, including the right to bring this suit for injunctive relief and damages.

23.     The 642 Patent generally relates to methods and devices allowing remote control devices to control one or more electronic consumer devices. At the time of the 642 Patent, existing consumer electronic devices would often be packaged with their own remote control device which were dedicated to operating only the particular device with which they were packaged, requiring owners of multiple devices to own multiple remote control devices. Each such remote control device would contain data relating only to the functions of its associated consumer electronic device. Memory limitations in these remote control devices would limit the amount of consumer electronic devices that a single remote control could control. The invention of the 642 Patent overcame these limitations in several ways including with a method and system for relaying a key code through a remote control device to an electronic consumer device allowing the electronic consumer device to be controlled without storing the associated code set on the remote control device.

COMPLAINT FOR PATENT INFRINGEMENT

24.     The 642 Patent is valid and enforceable. The claims of the 642 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention for a system to receive a keystroke indicator signal from a remote control device based on a user selecting a key on a remote control, generate a key code within a key code generator device using the keystroke indicator signal, modulate the key code onto a carrier signal, thereby generating a key code signal, and transmitting said key code signal from said key code generator device to an electronic consumer device. This was previously recognized by the Patent Trademark and Appeals Board (PTAB) in its denial of an institution of an IPR proceeding related to the 642 Patent. In particular, the PTAB determined that none of the 20+ cited combinations of references included at least the step of modulating the key code onto a carrier signal of claim 2.

25.     Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 642 Patent, including but not limited to claim 2, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Hisense Accused Products.  Hisense directly infringes one or more claims of the 642 Patent when Hisense or those acting upon Hisense's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Hisense Accused Products in the United States. Further, UEI contends that Hisense's customers and/or end users directly infringe the method claims listed below when using the Hisense Accused Products in the United States and Hisense therefore indirectly infringes by way of inducement and/or contributory infringement.

26.     For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 2 of the 642 Patent when used as intended by Hisense. Hisense also has infringed and continues to infringe at least one other claim of

the 642 Patent.

27.     In particular, the method of claim 2 is "[a] method comprising: receiving a keystroke indicator signal from a remote control device, wherein the keystroke indicator signal indicates a key on said remote control device that a user has selected." The Hisense Accused Products receive a keystroke indicator signal from a remote control device, wherein the keystroke indicator signal indicates a key on said remote control device that the user has pressed. When a user of a Hisense Roku TV presses one of the keys on the Roku remote controller the Hisense Accused Products will respond (or not respond) based on which button is pressed on the remote controller due to a signal received from the remote, which is a keystroke indicator signal.

28.     The method of claim 1 further involves "generating a key code within a key code generator device using the keystroke indictor signal." The Hisense Accused Products are key code generators that generate a key code using the keystroke indicator signal. For example, the generated key code is a code corresponding to a function of an electronic device connected to the Hisense Roku TV via a High-Definition Multimedia Interface ("HDMI") connection.

29.     The method of claim 1 further involves "modulating said key code onto a carrier signal, thereby generating a key code signal." The Hisense Accused Products modulate said key code onto a carrier signal, thereby generating a key code signal. For example, the Hisense Accused Products can send HDMI CEC signals, including volume up and down, which includes formatting and sending data via the CEC protocol on HDMI.

30.     The method of claim 1 further involves "transmitting said key code signal from said key code generator device to an electronic consumer device." The Hisense Accused Products transmit said key code signal to an electronic consumer device. For example, CEC signals from the Hisense Accused Products are broadcast to electronic consumer devices (*e.g.*, devices connected via HDMI such as soundbars).

31.     Hisense has infringed and continues to infringe claims of the 642 Patent

7

within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

32. Hisense has performed each and every element of claim 2 of the 642 Patent during at least its own product development and testing of the Hisense Accused Products.

33. Hisense has indirectly infringed and continues to indirectly infringe at least claim 2 of the 642 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

34. Hisense is on notice of the 642 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the 642 Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, UEI served its Disclosure of Asserted Claims and Infringement Contentions in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly accused Roku TVs, such as the Hisense Accused Products of infringing the 642 Patent. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the 642 Patent. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 642 Patent. On information and belief, Hisense had actual knowledge of the existence and relevance of the 642 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case. Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 642 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in

willful blindness of a reasonable likelihood of infringement. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 642 Patent. As such, Hisense either knew or should have known about the existence of the 642 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 2 of the 642 Patent within the meaning of 35 U.S.C. § 271(b).

35.     Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 642 Patent, and Hisense also provides further instructions on its website.

36.     Additionally, Hisense has contributed to the infringement of claims of the 642 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has contributed to the end users infringement of the 642 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Hisense knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 642 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

37.     Hisense's direct and indirect infringement of the 642 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

38.     Hisense's infringement of the 642 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 642 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 642 Patent.

39.     Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 642 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Hisense and will continue suffering irreparable harm absent injunctive relief.

## COUNT TWO

## INFRINGEMENT OF U.S. PATENT 7,969,514

40.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

41.     UEI is the owner of all rights, title, and interest in the 514 Patent, including the right to bring this suit for injunctive relief and damages.

42.     The 514 Patent generally relates to methods for setting up a universal remote control using interactive instructions. Manufacturers typically provide a remote control with an appliance, such as a television, or DVR, and, as such, different appliance types of different manufacturers are often commanded with different remote controls. To minimize the number of individual remote controls a user requires, universal remote controls have been developed. Prior art methods of setting up and configuring universal

remote controls were demanding, exacting, and generally frustrating for many users. For example, documents containing the setup instructions and setup codes are often be lost, misplaced, or may be superseded as brand and/or model names evolve. The 514 Patent solves this problem by providing a system and method for enabling set up of a controlling device capable of controlling a plurality of appliances, via an interactive instruction set and associated programming.

43. The 514 Patent is valid and enforceable. The claims of the 514 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to provide on a controllable appliance programming to display interactive instructions to a user for setting up a universal remote control. Typically, the setup process involved referencing paper manuals and tables of codes.

44. Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 514 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Hisense Accused Products. Hisense directly infringes one or more claims of the 514 Patent when Hisense or those acting upon Hisense's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Hisense Accused Products in the United States. Further, UEI contends that Hisense's customers and/or end users directly infringe the method claims listed below when using the Hisense Accused Products in the United States and Hisense therefore indirectly infringes by way of inducement and/or contributory infringement.

45. For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 1 of the 514 Patent when used as intended by Hisense. Hisense also has infringed and continues infringes at least one other claim of the

11

514 Patent.

46.     In particular, the method of claim 1 is "[a] method for providing interactive instructions to a user to set up a controlling device used to command a plurality of controllable appliances" involves "receiving a keystroke indicator signal from a remote control device, wherein the keystroke indicator signal indicates a key on said remote control device that a user has selected." The Hisense Accused Products perform a method for providing interactive instructions to a user to set up a controlling device used to command a plurality of controllable appliances. For example, the Hisense Accused Products are each sold for importation, imported, or sold after importation with a remote controller (*e.g.*, controlling device). The remote controller provided with the Hisense Accused Products can be used to control a plurality of controllable appliances. For example, the remote controller can be used to control the Hisense Accused Products as well as a soundbar and AVRs.

47.     The method of claim 1 further involves "providing on a first controllable appliance programming for the display of instructions to the user in response to input from the user via the controlling device."   The Hisense Accused Products perform the step of providing on a first controllable appliance programming for the display of instructions to the user in response to input from the user via the controlling device. For example, the Hisense Accused Products (*e.g.*, first controllable appliance) contain programming that displays instructions to the user in response to input from the user via the remote controller (*e.g.*, a controlling device). The user navigates to the "Control Other Devices (CEC)" menu by providing input via the Roku remote controller.

48.     The method of claim 1 further involves "providing input by the user to the first controllable appliance via the controlling device indicating that the controlling *device* is to be set up to command a second controllable appliance." The Hisense Accused Products perform the step of providing input by the user to the first controllable appliance via the controlling device indicating that the controlling device is to be set up to command a second controllable appliance. For example, the Roku OS on the Hisense

Accused Products (e.g., first controllable *appliance*) contains programming that displays instructions to the user in response to input from the user via the Roku remote controller (e.g., controlling device). Further, the Hisense Accused Products contain RAM and ROM for storing programming that is executed by a processor to display instructions to the user in response to input from the user via the controlling device. For example, within the "Control Other Devices (CEC)" menu, the user may provide input indicating that the remote control is to be set up to command an appliance connected via HDMI by selecting the option to "Search for CEC Devices" and pressing the "OK" button on the Roku remote controller.

49. The method of claim 1 further involves "accessing instruction data associated with the second controllable appliance by the programming provided on the first controllable appliance." The Hisense Accused Products perform the step of accessing instruction data associated with the second controllable appliance by the programming provided on the first controllable appliance. For example, the Roku Accused Products may access instruction associated with a connected CEC device such as an AVR when the user selects the "Search for CEC Devices" option in the "Control *Other* Devices (CEC)" menu. The Roku Accused Products may also access instruction data associated with a connected CEC device such as an AVR by automatically detecting the presence of the device when it is first connected via HDMI.

50. The method of claim 1 further involves "in response to input by the user via the controlling device, displaying the instruction data by the programming provided on the first controllable appliance for use by the user in setting up the controlling device to command the second controllable appliance." The Hisense Accused Products perform the step of in response to input by the user via the controlling device, displaying the instruction data by the programming provided on the first controllable appliance for use by the user in setting up the controlling device to command the second controllable appliance. For example, the user may provide input via the Roku remote controller (e.g., controlling *device*) by pressing the "OK" button when the option "Search for CEC

Devices" is selected in the "Control Other Devices (CEC)" menu.  The user may also provide input by selecting the type of device connected to the HDMI (ARC) port when the Hisense Accused Products automatically detect the presence of a connected device like an AVR. Once the Hisense Accused Products detects a connected device like an AVR, the user may select certain options in the "Control Other Devices (CEC)" menu to configure the Roku remote controller to control the AVR

51.     Hisense has infringed and continues to infringe claims of the 514 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

52.     Hisense has performed each and every element of claim 1 of the 514 Patent during at least its own product development and testing of the Hisense Accused Products.

53.     Hisense has indirectly infringed and continues to indirectly infringe at least claim 1 of the 514 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

54.     Hisense is on notice of the 514 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the 514 Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, UEI served its Disclosure of Asserted Claims and Infringement Contentions in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly accused Roku TVs, such as the Hisense Accused Products of infringing nine of UEI's patents. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the nine UEI patents. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 514 Patent. On information and belief, Hisense had actual

knowledge of the existence and relevance of the 514 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case.  Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 514 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. The prior Complaint and subpoena gave Hisense notice that it was infringing UEI's patents. A reasonable investigation of the infringement allegations in the prior Complaint and subpoena would have given Hisense knowledge of the existence and its infringement of the 514 Patent. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 514 Patent. As such, Hisense either knew or should have known about the existence of the 514 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 1 of the 514 Patent within the meaning of 35 U.S.C. § 271(b).

55.    Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 514 Patent, and Hisense also provides further instructions on its website.

56.     Additionally, Hisense has contributed to the infringement of claims of the 514 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has contributed to the end users infringement of the 514 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Hisense knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 514 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

57.     Hisense's direct and indirect infringement of the 514 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

58.     Hisense's infringement of the 514 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 514 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 514 Patent.

59.     Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 514 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Hisense and will continue suffering irreparable harm absent injunctive relief.

## COUNT THREE

## INFRINGEMENT OF U.S. PATENT 9,911,325

60.    UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

61.    UEI is the owner of all rights, title, and interest in the 325 Patent, including the right to bring this suit for injunctive relief and damages.

62.    The 325 Patent arose from the same family as the 642 Patent, and its claims are inventive for many of the same reasons as described with respect to the 642 Patent.

63.    The 325 Patent is valid and enforceable. The claims of the 325 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. The 325 Patent claims share some similarities with the inventions claimed in the 325 Patent, but they also include different or additional elements, each of which make the claims novel for the same or additional reasons as described above. For example, claim 1 of the 325 Patent includes is apparatus claim and includes additional elements related to such physical devices, as well as additional limitations where the "codeset further comprises time information that describes how a digital one and/or digital zero within the selected one of the plurality of key code data is to be represented in the key code signal to be transmitted to the second device." For this reason as well, the combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.

64.    Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 325 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States the Hisense Accused Products.

65.    For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 1 of the 325 Patent when used as intended by Hisense. Hisense also has infringed and continues infringes at least one other claim of the

325 Patent.

66.     Claim 1 involves "A first device for transmitting a command to control a functional operation of a second device." The Hisense Accused Products are first devices for transmitting a command to control a functional operation of a second device. For example, the Hisense Accused Products (*e.g.*, first device) transmit a command to control a functional operation of a second device (*e.g.*, audiovisual receiver ("AVR") or soundbar).

67.     Claim 1 further involves the first device comprising "a receiver." The Hisense Accused Products contain a receiver that is used to communicate with the remote control and receive signals via Bluetooth, Wi-Fi Direct, or IR, depending on the particular device.

68.     Claim 1 further involves the first device comprising "a transmitter." The Hisense Accused Products contain a transmitter in the form of at least the hardware used to send signals via RF or HDMI CEC.

69.     Claim 1 further involves the first device comprising "a processing device coupled to the receiver and the transmitter." The Hisense Accused Products contain a processor coupled to the device's receiver and transmitter. For example and upon information and belief, the exemplary Hisense Roku TV 43R7E contains a dual core processor that is coupled to the receiver and the transmitter.

70.     Claim 1 further involves the first device comprising "a memory storing instructions executable by the processing device." The Hisense Accused Products contain memory storing instructions in the form of software that is executable by the processing device. For example, each Hisense Accused Product includes the Roku OS software.

71.     Claim 1 further involves the instructions causing the processing device to "generate a key code using a keystroke indicator received from a third device in communication with first device via use of the receiver, the keystroke indicator having data that indicates an input element of the third device that has been activated." The Hisense Accused Products generate a key code using a keystroke indicator received from

18

a third device in communication with the Hisense Accused Products via use of the receiver, the keystroke indicator having data that indicates an input element of the third device that has been activated. For example, the Hisense Accused Products generate a key code in response to a keystroke indicator signal pressed on the Roku remote control (*e.g.*, third device).  An example of a generated key code is the code that corresponds to a function of an external device, such as volume. The Hisense Accused Products receive the keystroke indicator from the remote control via use of their receiver. The keystroke indicator signal has data indicating that an input element of the remote control has been activated. This can be observed by the fact that the Hisense Accused Products will respond (or not respond) in different ways based on which button is pressed on the remote control.

72.　　Claim 1 further involves the instructions causing the processing device to "format the key code for transmission to the second device." The Hisense Accused Products format the key code for transmission to the second device. For example, the Hisense Accused Products format a key code for transmission to the second device (*e.g.*, an AVR or soundbar) via HDMI CEC.

73.　　Claim 1 further involves the instructions causing the processor to "transmit the formatted key code to the second device in a key code signal via use of the transmitter." The Hisense Accused Products transmit the formatted key code to the second device in a key code signal via use of the transmitter. For example, the Hisense Accused Products transmit a CEC-formatted key code to a second device (*e.g.*, an audio visual receiver and/or soundbar), via HDMI link.

74.　　Claim 1 further involves "wherein the generated key code comprises a one of a plurality of key code data stored in a codeset." The key codes generated by the Hisense Accused Products comprise a one of a plurality of data that is stored in a codeset of CEC data.

75.　　Claim 1 further involves "wherein the one of the plurality of key code data is selected from the codeset as a function of the keystroke indicator received from the third

COMPLAINT FOR PATENT INFRINGEMENT

device." The one of the plurality of key code data used by the Hisense Accused Products is selected from the codeset as a function of the keystroke indicator received from the remote control.

76. Claim 1 further involves "wherein each of the plurality of key code data stored in the codeset comprises a series of digital ones and/or digital zeros." The CEC data transmitted by the Hisense Accused Products is made up of a series of digital ones and/or digital zeros.

77. Claim 1 further involves "wherein the codeset further comprises time information that describes how a digital one and/or a digital zero within the selected one of the plurality of key code data is to be represented in the key code signal to be transmitted to the second device." The CEC data transmitted by the Hisense Accused Products includes time information that describes how a digital one and/or a digital zero is to be represented in a signal transmitted to a second device, such as a TV or audiovisual receiver.

78. Hisense has infringed and continues to infringe claims of the 325 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

79. Hisense has indirectly infringed and continues to indirectly infringe claims of the 325 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Devices.

80. Hisense is on notice of the 325 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the 325 Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, UEI served its Disclosure of Asserted Claims and Infringement Contentions in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly

accused Roku TVs, such as the Hisense Accused Products of infringing the 325 Patent. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the 325 Patent. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 325 Patent. On information and belief, Hisense had actual knowledge of the existence and relevance of the 325 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case. Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 325 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 325 Patent. As such, Hisense either knew or should have known about the existence of the 325 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 1 of the 325 Patent within the meaning of 35 U.S.C. § 271(b).

81.    Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 325 Patent, and

Hisense also provides further instructions on its website.

82.     Additionally, Hisense has contributed to the infringement of claims of the 325 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has contributed to the end users infringement of the 325 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Roku knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 325 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

83.     Hisense's direct and indirect infringement of the 325 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

84.     Hisense's infringement of the 325 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 325 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 325 Patent.

85.     Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 325 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Hisense and will continue suffering irreparable harm absent injunctive relief.

## COUNT FOUR

## INFRINGEMENT OF U.S. PATENT 10,325,486

86.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

87.     UEI is the owner of all rights, title, and interest in the 486 Patent, including the right to bring this suit for injunctive relief and damages.

88.     The 486 Patent generally relates to a method for configuring a user interface presented on a home theater device (like a TV) by adding an icon representing a controllable function of an appliance (such as an audiovisual receiver ("AVR")) based on connection data received from the appliance such that selection of that icon via input by a remote control controls the function of the appliance identified by the icon.

89.     The 486 Patent is valid and enforceable. The claims of the 486 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to configure user interfaces by adding icons representative of the controllable function of an appliance based on connection data received from the appliance.

90.     Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 486 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States the Hisense Accused Products. Hisense directly infringes one or more claims of the 486 Patent when Hisense or those acting upon Hisense's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Hisense Accused Products in the United States.  Further, UEI contends that Hisense's customers and/or end users directly infringe the method claims listed below when using the Hisense Accused Products in the United States and Hisense therefore indirectly infringes by way of inducement and/or contributory infringement.

91.    For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 1 of the 486 Patent when used as intended by Hisense.  Hisense also has infringed and continues to infringe at least one other claim of the 486 Patent.

92.    In particular, the method of claim 1 is "[a] method for configuring a user interface that is caused to be presented by a home theater device in a display device associated with the home theater device." The Hisense Accused Products perform a method for configuring a user interface that is caused to be presented by a home theater device in a display device associated with the home theater device. For example, the Hisense Accused Products are a home theater device with an associated display. The Hisense Accused Products contain various user interfaces, including home screen interface.

93.    The method of claim 1 further involves "receiving at the home theater device from a controllable appliance in communication with the home theater device via use of a high definition multimedia ("HDMI") connection data that functions to identify a controllable function of the controllable appliance." The Hisense Accused Products perform the step of receiving at the home theater device from a controllable appliance in communication with the home theater device via use of a high definition multimedia ("HDMI") connection data that functions to identify a controllable function of the controllable appliance. For example, an audiovisual receiver ("AVR") is an example of a controllable appliance that may be connected to the Hisense Accused Products via an HDMI connection. The Hisense Accused Products (*e.g.*, home theater device) receives CEC data (*e.g.*, connection data) from the connected AVR (*e.g.*, controllable appliance). The CEC data functions to identify functions of the soundbar, such as volume control and power.

94.    The method of claim 1 further involves "automatically adding by the home theater device to the user interface an icon representative of the controllable function of the controllable appliance that was identified by the data received from the controllable

appliance." The Hisense Accused Products perform the step of automatically adding by the home theater device to the user interface an icon representative of the controllable function of the controllable appliance that was identified by the data received from the controllable appliance. Without any connected audio devices, the volume icon for the Hisense Accused Products is a conical speaker. After connecting an AVR via HDMI, the Hisense Roku TV (*e.g.*, home theater device) will automatically add an icon to the Hisense Accused Products home screen representative of the connected soundbar (*e.g.*, controllable appliance). Specifically, a volume icon depicting a speaker, a circular volume scrollbar, and a volume level number appear in the upper right of the screen as the AVR is connected to the Hisense Accused Products via an HDMI connection. The scrollbar and number correspond to the volume up/down functions of the AVR.

95.     The method of claim 1 further involves "in response to the home theater device receiving from a controlling device a command transmission that is indicative of a selection of the added icon from the user interface when the user interface is displayed in the display device associated with the home theater device." The Hisense Accused Products perform the step of in response to the home theater device receiving from a controlling device a command transmission that is indicative of a selection of the added icon from the user interface when the user interface is displayed in the display device associated with the home theater device. For example, the user selects the AVR volume icon by pressing the volume up, volume down, or mute buttons on the Roku remote controller. The Roku remote controller transmits these commands to the Hisense Accused Products via IR.

96.     The method of claim 1 further involves "causing the home theater device to issue a command to at least the controllable appliance to control at least the controllable function of the controllable appliance that was identified by the data received from the controllable appliance." The Hisense Accused Products perform the step of causing the home theater device to issue a command to at least the controllable appliance to control at least the controllable function of the controllable appliance that was identified by the data

received from the controllable appliance. When the user selects the AVR icon by pressing the volume up, volume down, or mute buttons on the Roku remote controller, the Hisense Accused Product (e.g., home theater device), issues commands to the AVR to control the volume.

97.     Hisense has infringed and continues to infringe claims of the 486 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

98.     Hisense has performed each and every element of claim 1 of the 486 Patent during at least its own product development and testing of the Hisense Accused Products.

99.     Hisense has indirectly infringed and continues to indirectly infringe at least claim 1 of the 486 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

100.     Hisense is on notice of the 486 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the 486 Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, UEI served its Disclosure of Asserted Claims and Infringement Contentions in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly accused Roku TVs, such as the Hisense Accused Products of infringing nine of UEI's patents. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the nine UEI patents. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 486 Patent. On information and belief, Hisense had actual knowledge of the existence and relevance of the 486 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit

against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case. Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 486 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. The prior Complaint and subpoena gave Hisense notice that it was infringing UEI's patents. A reasonable investigation of the infringement allegations in the prior Complaint and subpoena would have given Hisense knowledge of the existence and its infringement of the 486 Patent. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 486 Patent. As such, Hisense either knew or should have known about the existence of the 486 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 1 of the 486 Patent within the meaning of 35 U.S.C. § 271(b).

101.   Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 486 Patent, and Hisense also provides further instructions on its website.

102.   Additionally, Hisense has contributed to the infringement of claims of the 486 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has

contributed to the end users infringement of the 486 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Hisense knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 486 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

103. Hisense's direct and indirect infringement of the 486 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

104. Hisense's infringement of the 486 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 486 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 486 Patent.

105. Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 486 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Hisense and will continue suffering irreparable harm absent injunctive relief.

## **COUNT FIVE**

## **INFRINGEMENT OF U.S. PATENT 10,600,317**

106. UEI incorporates the previous paragraphs of this Complaint as if fully set

forth herein.

107.   UEI is the owner of all rights, title, and interest in the 317 Patent, including the right to bring this suit for injunctive relief and damages.

108.   Manufacturers typically provide a remote control with an appliance, such as a television, or DVR, and, as such, different appliance types of different manufacturers are often commanded with different remote controls. To minimize the number of individual remote controls a user requires, universal remote controls have been developed. Prior art methods of setting up and configuring universal remote controls were demanding, exacting, and generally frustrating for many users. For example, documents containing the setup instructions and setup codes are often lost, misplaced, or may be superseded as brand and/or model names evolve. The '317 Patent solves this problem by providing a device for enabling set up of a controlling device capable of controlling a plurality of appliances, via an interactive instruction set and associated programming.

109.   The 317 Patent is valid and enforceable.  The claims of the 317 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time to use interactive instructions to set up a remote control to control an appliance based on type and brand information of the appliance.

110.   Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 317 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States the Hisense Accused Products. Hisense directly infringes one or more claims of the 317 Patent when Hisense or those acting upon Hisense's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Hisense Accused Products in the United States. Further, UEI contends that Hisense's customers

and/or end users directly infringe the method claims listed below when using the Hisense Accused Products in the United States and Hisense therefore indirectly infringes by way of inducement and/or contributory infringement.

111.   For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 1 of the 317 Patent when used as intended by Hisense.  Hisense also has infringed and continues to infringeat least one other claim of the 317 Patent.

112.   In particular, the device of claim 1 is "[a] controlled device." Hisense Accused Products are a controlled device.

113.   The device of claim 1 further includes "a receiver for receiving communications from a remotely located controlling device." The Hisense Accused Products contain a receiver for receiving communications from a remotely located controlling device. For example, the Hisense Accused Products use wireless communications to communicate with a Roku remote control, which requires either an IR or a wireless receiver.

114.   The device of claim 1 further includes "a transmitter for transmitting communications to a display device coupled to the controlled device." The Hisense Accused Products contain a transmitter for transmitting communications to a display device coupled to the controlled device. For example, the Hisense Accused Products contain circuitry associated with transmitting communications received via the wireless receiver and processed by the processor to the TV screen (*e.g.*, display device).

115.   The device of claim 1 further includes "a processing device coupled to the receiver and the transmitter." Hisense Accused Products include a processing device coupled to the receiver and the transmitter. For example, and upon information and belief, the exemplary Hisense 43R7E contains a dual core processor that is coupled to the receiver and the transmitter.

116.   The device of claim 1 further includes "a memory storing executable instructions, wherein the instructions, when executed by the processing device, cause the

controlled device." Hisense Accused Products contain a memory storing executable instructions, wherein the instructions, when executed by the processing device, cause the controlled device to practice the claimed invention. For example, each of the Hisense Accused Products includes the Roku OS software.

117.   The device of claim 1 further includes instructions that "automatically progress through a plurality of setup procedure steps in response to each of a plurality of communications received via use of the receiver from the controlling device." The Hisense Accused Products contain instructions that automatically progress through a plurality of setup procedure steps in response to each of a plurality of communications received via use of the receiver from the controlling device. For example, when setting up an AVR, the Hisense Accused Products automatically progress through a plurality of setup procedure steps such as when the Hisense Accused Products receive a communication from the Roku remote control that the "Search for CEC Devices" menu item has been selected.

118.   The device of claim 1 further includes instructions that "transmit to the display device via use of the transmitter communications to cause the display device to display instructional information to a user while progressing through the plurality of setup procedure steps." Hisense Accused Products contain instructions that transmit to the display device via use of the transmitter communications to cause the display device to display instructional information to a user while progressing through the plurality of setup procedure steps. For example, during process for setting up an AVR, the programming on the Hisense Accused Products cause the TV screen (e.g., display device) to display screens guiding the user through the setup process (*e.g.*, instructional information).

119.   The device of claim 1 further includes instructions that "in response to at least a type and brand of a target device to be controlled via use of the controlling device being identified via use of the plurality of setup procedure steps, select at least one command code set which has been predetermined to be likely to be usable by the

controlling device to control operational functions of the target device when subsequently provisioned to the controlling device." The Hisense Accused Products contain instructions that in response to at least a type and brand of a target device to be controlled via use of the controlling device being identified via use of the plurality of setup procedure steps, select at least one command code set which has been predetermined to be likely to be usable by the controlling device to control operational functions of the target device when subsequently provisioned to the controlling device. For example, during process for setting up an AVR, the programming on Hisense Accused Products select a CEC codeset to control the AVR. The Hisense Accused Products identify the CEC code set based on the type (*e.g.*, audio device) and brand (*e.g.*, Denon) of the connected device.

120.   Hisense has infringed and continues to infringe claims of the 317 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

121.   Hisense has performed each and every element of claim 1 of the 317 Patent during at least its own product development and testing of the Hisense Accused Products.

122.   Hisense has indirectly infringed and continues to indirectly infringe at least claim 1 of the 317 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

123.   Hisense is on notice of the 317 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the 317 Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, UEI served its Disclosure of Asserted Claims and Infringement Contentions in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly

accused Roku TVs, such as the Hisense Accused Products of infringing nine of UEI's patents. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the nine UEI patents. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 317 Patent. On information and belief, Hisense had actual knowledge of the existence and relevance of the 317 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case.  Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 317 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. The prior Complaint and subpoena gave Hisense notice that it was infringing UEI's patents. A reasonable investigation of the infringement allegations in the prior Complaint and subpoena would have given Hisense knowledge of the existence and its infringement of the 317 Patent. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 317 Patent. As such, Hisense either knew or should have known about the existence of the 317 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 1 of the 317 Patent within the meaning of 35 U.S.C. § 271(b).

124.   Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of

promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 317 Patent, and Hisense also provides further instructions on its website.

125.   Additionally, Hisense has contributed to the infringement of claims of the 317 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has contributed to the end users infringement of the 317 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Hisense knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 317 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

126.   Hisense's direct and indirect infringement of the 317 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

127.   Hisense's infringement of the 317 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 317 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 317 Patent.

128.   Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 317 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and

significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Hisense and will continue suffering irreparable harm absent injunctive relief.

## COUNT SIX

## INFRINGEMENT OF U.S. PATENT 8,004,389

129.    UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

130.    UEI is the owner of all rights, title, and interest in the 389 Patent, including the right to bring this suit for injunctive relief and damages.

131.    The 389 Patent was filed as a continuation of the patent that issued as the 642 Patent, and its claims are inventive for many of the same reasons as described with respect to the 642 Patent.

132.    The 389 Patent is valid and enforceable. The claims of the 389 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. The 389 Patent's claims share some similarities with the inventions claimed in the 642 Patent, but they include different or additional elements, each of which make the claims novel for the same or additional reasons as described above. For example, claim 2 of the 389 Patent includes the step of "identifying said codeset using input from a user of said remote control device, wherein said codeset is identified when said user stops pressing a key on said remote control device." For this reason as well, the combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention.

133.    Hisense has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 389 Patent, including but not limited to claim 4, by using, making, offering to sell, and/or selling without authority in the United States the Hisense Accused Products. Hisense directly infringes one or more claims of the

389 Patent when Hisense or those acting upon Hisense's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Hisense Accused Products in the United States. Further, UEI contends that Hisense's customers and/or end users directly infringe the method claims listed below when using the Hisense Accused Products in the United States and Hisense therefore indirectly infringes by way of inducement and/or contributory infringement.

134.   For purposes of example only, and without limitation, the Hisense Accused Products perform every element of claim 4 of the 389 Patent when used as intended by Hisense. Hisense also has infringed and continues to infringe at least one other claim of the 389 Patent.

135.   In particular, the device of claim 4 is "[a] remote control device." The Hisense Accused Products include a remote control device.

136.   The device of claim 4 further includes "code signal, wherein said first key code signal is generated by modulating a key code onto a first carrier signal, said first carrier signal falling within a radio frequency band." The Hisense Accused Products include a receiver that receives a first key code signal, wherein said first key code signal is generated by modulating a key code onto a first carrier signal, said first carrier signal falling within a radio frequency band. The Hisense Accused Products have a wireless receiver to receive wireless signals from a device such as a Roku TV. The Hisense Accused Products send key codes to the remote control during at least the remote setup process, when codes for device control are wirelessly sent from the Roku TV.

137.   The device of claim 4 further includes "a transmitter that transmits a second key code signal, wherein said second key code signal is generated by modulating said key code onto a second carrier signal, said second carrier signal falling within an infrared frequency band." The remote controls included with the Hisense Accused Products include a transmitter that transmits a second key code signal, wherein said second key code signal is generated by modulating said key code onto a second carrier signal, said second carrier signal falling within an infrared frequency band. The remote controls

included with the Hisense Accused Products include a transmitter that transmits signals in the infrared frequency band to transmit signals to external devices (such as TVs).

138.   The device of claim 4 further includes "a keypad that includes a key that corresponds to said key code, wherein said key code corresponds to a function of an electronic consumer device." The remote controls included with the Hisense Accused Products include a keypad that includes a key that corresponds to said key code, wherein said key code corresponds to a function of an electronic consumer device. These remotes include keys that correspond to key codes for power and volume, wherein those key codes correspond to a function of a TV that the remotes are programmed to control.

139.   The device of claim 4 further includes that "said remote control device is contained within a single structure." The remote controls included with the Hisense Accused Products are contained within a single structure – a hard plastic case.

140.   Hisense has infringed and continues to infringe claims of the 389 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Hisense Accused Products.

141.   Hisense has performed each and every element of claim 4 of the 389 Patent during at least its own product development and testing of the Hisense Accused Products.

142.   Hisense has indirectly infringed and continues to indirectly infringe at least claim 4 of the 389 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Hisense has induced to infringe include, without limitation, Hisense's customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

143.   Hisense is on notice of the 389 Patent at least as of the filing of this Complaint. In addition, Hisense has had actual or constructive knowledge of the Hisense Patent and its infringement prior to the filing of this Complaint. On December 24, 2018, Hisense served its Disclosure of Asserted Claims and Infringement Contentions in

*Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), which explicitly accused Roku TVs, such as the Hisense Accused Products of infringing the 389 Patent. Further, on October 22, 2019, in that same case UEI served a subpoena on Hisense seeking documents and testimony related to Hisense's infringement of the 389 Patent. It is further believed that Hisense investigated UEI's patents and gained actual knowledge of the 389 Patent. On information and belief, Hisense had actual knowledge of the existence and relevance of the 389 Patent, or was willfully blind to its existence and relevance, prior to the filing of the Complaint, through UEI's prior lawsuit against Roku, *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal), or through UEI's subpoena to Hisense in that case. Further, Hisense knew or was willfully blind that the Hisense Accused Products infringe the 389 Patent during normal operation based upon the allegations made in *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal). If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. The Hisense Defendants are large companies that annually generate millions of dollars of revenue, have ready access to the capital markets and have the ability to pay licensing fees or royalties to UEI. As a result, Hisense at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 389 Patent. As such, Hisense either knew or should have known about the existence of the 389 Patent and that creating features in its devices to practice that patent would induce infringement. Hisense has not taken any steps of remedial action to mitigate its infringement. Hisense has induced and continues to induce end users of the Hisense Accused Products to infringe at least claim 4 of the 389 Patent within the meaning of 35 U.S.C. § 271(b).

144.   Hisense's acts of inducement include making, using, selling, and offering to sell the Hisense Accused Products, as well as Hisense's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Hisense Accused Products in an infringing manner. For example, the Hisense Accused Products provide step-by-step instructions on how an end

user should use these products in a manner that directly infringes the 389 Patent, and Hisense also provides further instructions on its website.

145.   Additionally, Hisense has contributed to the infringement of claims of the 389 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Hisense has contributed to the end users infringement of the 389 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Hisense Accused Products, which Hisense knew contain the software and features discussed above that are especially made or adapted by Hisense for infringing uses of claims of the 389 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Hisense's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Hisense Accused Products.

146.   Hisense's direct and indirect infringement of the 389 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

147.   Hisense's infringement of the 389 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Hisense knew or should have known about the 389 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Hisense Accused Products despite an objectively high likelihood that this conduct would infringe the 389 Patent.

148.   Hisense's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 389 Patent. If Hisense's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like TCL and will continue suffering irreparable harm

absent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UEI respectfully requests relief and judgement against the Hisense Defendants, as follows:

1.      An entry of judgment in favor of UEI and against Hisense;

2.      An award of damages adequate to compensate UEI for Hisense direct infringement and indirect infringement of U.S. Patent Nos. 7,589,642; 7,969,514; 9,911,325; 10,325,486; 10,600,317; and 8,004,389.

3.      A preliminary and permanent injunction against Hisense and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, and all others acting in concert or privity with Hisense from further infringement of the Patents-in-Suit;

4.      If an injunction is denied, an award of an ongoing royalty;

5.      An award of treble damages to UEI as a result of Hisense's willful infringement;

6.      An award of prejudgment interest;

7.      A finding that, with respect to Hisense, this case is exceptional and awarding to UEI its reasonable costs and attorney fees under 35 U.S.C. § 285;

8.      All other costs and fees awardable by law; and

9.      Such other relief that the Court sees as just and proper.

## **JURY DEMAND**

10.      UEI hereby demands a jury trial on all causes of action, claims, and issues so triable as a matter of right.

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted this 9th day of April, 2020.

By: */s/ Ryan W. Koppelman*

Ryan W. Koppelman (SBN 290704)
Michael J. Newton (SBN 156225)
Katherine G. Rubschlager (SBN 328100)
**ALSTON & BIRD LLP**
950 Page Mull Road
Palo Alto, CA 94304
Telephone:   (650) 838-2000
Facsimile:    (650) 838-2001
ryan.koppelman@alston.com
mike.newton@alston.com
katherine.rubschlager@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100
evan.woolley@alston.com

Thomas W. Davison (to be admitted *pro hac vice*)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:   (202) 239-3300
Facsimile:    (202) 239-3333
tom.davison@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*

COMPLAINT FOR PATENT INFRINGEMENT